Farmers Cooperative Company, A Corporation v. Commissioner.
Farmers Coop. Co. v. Commissioner
Docket No. 66167.
United States Tax Court
T.C. Memo 1959-14; 1959 Tax Ct. Memo LEXIS 236; 18 T.C.M. (CCH) 72; T.C.M. (RIA) 59014; January 29, 1959
*236 Determinations made as to the right of petitioner, a nontax-exempt farmers' cooperative association, to exclude from its gross income as part of its patronage dividends, certain amounts allocated for the benefit of its members only, out of compensation received from both members and nonmembers of the cooperative, for services in handling and storing grain. Pomeroy Cooperative Grain Co., 31 T.C. -, (Dec. 31, 1958), followed. James M. Stewart, Esq., 707 Central National Building, Des Moines, Ia., for the petitioner. Ivan L. Onnen, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: Respondent determined deficiencies in petitioner's income taxes as follows: Year ended
Deficiency
October 31, 1953
$ 1,733.62
October 31, 1954
7,230.89
October 31, 1955
11,005.59
*237 The issues presented for decision are whether the petitioner, a non-tax-exempt farmers' cooperative association, is entitled to exclude from its gross income, as part of its patronage dividends (designated on its returns as "Patronage Refunds"), amounts allocated for credit and subsequent distribution to its members only, out of the following: (1) Compensation received by petitioner from the Commodity Credit Corporation (a government agency which was not a member of the cooperative), for handling and storing grain which producers of such grain (including both members and nonemembers of the cooperative) had surrendered to such government agency at petitioner's elevator, in satisfaction of government crop loans. (2) Storage fees received by petitioner from others than the Commodity Credit Corporation, for storing grain owned by them. All other issues raised in the pleadings were abandoned by petitioner at the trial. Findings of Fact Some of the facts were stipulated; and it was stipulated also that certain exhibits and all oral testimony relating thereto, previously received in evidence in the case of Pomeroy Cooperative Grain Co., 31 T.C. - (Dec. 31, 1958), are incorporated *238 herein and may be considered by this Court in rendering its opinion in the instant case. The stipulation, together with all exhibits identified therein, is incorporated herein by reference. The petitioner, Farmers Cooperative Company, is an Iowa corporation which has its principal place of business at Ellsworth, Iowa. During all the taxable years, it qualified and was operated as a farmers' "cooperative association" under Chapter 499 of the Codes of Iowa, 1950 and 1954. It did not qualify (which it has conceded) as a tax-exempt cooperative, under section 101(12) of the Internal Revenue Code of 1939 or under section 521 of the Internal Revenue Code of 1954. It kept its books of account on an accrual basis, for fiscal years ended October 31. Its return for all the taxable years were filed with the district director of internal revenue for the district of Iowa. Petitioner is a purchasing and marketing cooperative, dealing in grain, petroleum products, and farm supplies. These business activities were carired on through three departments, known respectively as the Grain, Petroleum, and Merchandise Departments. Its activities in connection with the marketing of *239 grain purchased from its patrons, and also those in connection with the handling and storing of grain for patrons (here directly involved), were carried on through its Grain Department. Each of said three departments transacted business with nonmembers, as well as with members, of the petitioner cooperative. During each of the years involved, petitioner purchased grain at its elevator from the producers thereof (including both members and nonmembers of the cooperative). If the seller was a member of the cooperative, he was given credit on petitioner's patronage ledger for the number of bushels which he sold. Title to all grain so purchased, passed to petitioner at the time of its delivery at petitioner's elevator; and such grain was then included by petitioner in its inventory. The seller was paid the current market price for the grain. Thereafter, petitioner sold such grain either on the terminal markets or elsewhere, in such manner as it believed would yield it the greatest profit. The amounts of grain so purchased by petitioner from producers during the taxable years were as follows: Bushels
Bushels
purchased
purchased
Total
from
from non-
bushels
Year ended
members
members
purchased
Oct. 31, 1953
299,016
137,450
436,466
Oct. 31, 1954
537,263
302,432
839,695
Oct. 31, 1955
308,772
233,856
542,628
*240 The gross profits realized by petitioner from the sale of grain so purchased were included by petitioner in the so-called "gross savings and income" (representing, in substance, gross profits per books) of its Grain Department, for the purpose of computing patronage dividends. During each of the taxable years, petitioner also received at its elevator, certain other grain which producers thereof voluntarily surrendered to the Commodity Credit Corporation (a government agency, hereinafter called the "C.C.C."), in satisfaction of government crop loans made to such producers by said agency. Grain so surrendered is hereinafter called "Government grain." The deliveries of such grain at the elevator were made pursuant to written instructions issued to the producers by the county committee which, acting as local representative of the C.C.C., had approved the loans on behalf of said agency. If the delivering producer was a member of the cooperative, he was given credit on petitioner's patronage ledger for the number of bushels delivered. Thereafter, in accordance with written instructions issued by the county committee, petitioner either shipped out the grain at once to a point designated *241 by the committee, or stored it in its elevator, or placed it in government-owned storage bins situated in the locality. If the grain was stored in petitioner's elevator, the handling and storing were done pursuant to a Uniform Grain Storage Agreement between petitioner (as a warehouseman) and the C.C.C., which fixed the amounts of the compensation to be paid to petitioner by the C.C.C. for such services; and a warehouse receipt for the grain was issued by petitioner for the C.C.C. If, on the other hand, the grain was stored by petitioner in government-owned bins, this was done in accordance with a contract between petitioner and the particular county committee, which fixed the amount of the compensation to be paid to petitioner for its services in loading and unloading the grain into and out of such bins. Title to all Government grain delivered to petitioner by producers in satisfaction of government crop loans, passed to the C.C.C. at the time of its delivery at petitioner's elevator. Petitioner at no time owned any of this Government grain; it at no time included any of the same in its inventory; and it did not market any of such grain on behalf of anyone. The number of bushels *242 of Government grain delivered to petitioner in each of the taxable years was: Bushels de-
Bushels de-
livered
Total
livered by
by non-
bushels
Year ended
members
members
delivered
Oct. 31, 1953
165,217
39,077
204,294
Oct. 31, 1954
281,057
60,595
341,652
Oct. 31, 1955
207,172
34,054
241,226
The amounts of compensation received by petitioner from the C.C.C. during the taxable years, for handling and storing Government grain were: $14,824.41 for the taxable year 1953; $44,478.81 for the taxable year 1954; and $92,699.31 for the taxable year 1955. All the above amounts of compensation received for handling and storing Government grain were included by petitioner in the "gross savings and income" of its Grain Department, for the purpose of computing patronage dividends. During the taxable years, petitioner allocated portions of these amounts as patronage dividends, for the benefit of its members only; and it excluded the amounts so allocated from gross income on its Federal income tax returns, by adding the same to its cost of goods purchased. Neither the C.C.C. nor any county committee acting on behalf of such agency was a member *243 of the petitioner cooperative association. During each of the taxable years, petitioner also received certain other grain which the owners thereof (being persons other than the C.C.C.) delivered for storage in petitioner's elevator. Petitioner thereupon stored such grain and received storage fees from the owners for its services in connection therewith. The evidence does not show what portions of such storage fees were paid by members of the cooperative or by any particular member. The amounts of the storage fees received during the taxable years, from grain owners other than the C.C.C., were: Amount of storage
Year ended
fees received
October 31, 1953
$4,159.10
October 31, 1954
1,896.79
October 31, 1955
3,497.68
All the above storage fees were included by petitioner in the "gross savings and income" of its Grain Department, for the purpose of computing patronage dividends. During the taxable years, petitioner allocated portions of these fees as patronage dividends for the benefit of its members only; and it excluded the amounts so allocated from gross income reported on its Federal income tax returns, by adding the same to its cost of goods purchased. *244 All patronage dividends for the taxable years involved were allocated to member patrons pursuant to a preexisting obligation imposed on petitioner by the Codes of Iowa. The respondent, in his notice of deficiency, determined that petitioner was not entitled to exclude from its gross income, as part of its patronage dividends, any of the amounts allocated for the benefit of its members only, out of: (1) Compensation received from the C.C.C. for handling and storing grain owned by such agency; and (2) storage fees received from persons other than the C.C.C. for storing grain owned by them. Opinion The issues presented in this case are identical with those which were presented in the case of Pomeroy Cooperative Grain Co., 31 T.C. - (Dec. 31, 1958). The two cases were tried on the same trial calendar; and the facts of the two cases are substantially the same. At the trial herein, counsel for the petitioner and the respondent agreed that the holdings made by this Court in the Pomeroy case, in respect of the issues therein, should control the decision of the issues in the instant case. Accordingly we here hold, consistent with the holdings heretofore made by us in the Pomeroy case: *245 (1) That amounts allocated by petitioner, as patronage dividends for the benefit of its members only, out of compensation received from the C.C.C. for handling and storing Government grain, do not qualify as true patronage dividends; and that the same are not excludible from petitioner's gross income. (2) That amounts allocated by petitioner, as patronage dividends for the benefit of its members only, out of storage fees received from persons other than the C.C.C., who were not members of the petitioner cooperative and who were not entitled to share in the benefits of such allocations, likewise do not qualify as true patronage dividends and are not excludible from petitioner's gross income. (3) That amounts allocated by petitioner, as patronage dividends for the benefit of its members only, out of storage fees received from its members for storing grain owned by them, do qualify as true patronage dividends and are excludible from petitioner's gross income, to the extent only that the amounts allocated for the benefit of the particular members who stored grain were proportionate to the shares of these members in the total member storage business which produced the storage fees *246 so allocated, less the necessary expenses applicable thereto. Decision will be entered under Rule 50.